Good morning. May it please the Court. My name is Jack Pelzer here today representing Global and Rocky Mountain. I'd like to reserve four minutes of my time for rebuttal if I may. I'm happy to respond to any questions this Court has and, if I have time, circle back to the conflicts that we find between the Buckeye case and the Bridge Fund case, but I'd like to focus directly on the merits of the unconscionability claim. First of all, the unconscionability is procedural unconscionability, obviously. And here we have, at best, a mere nominal level of procedural unconscionability. The unconscionability arises solely from the fact that Ms. Newton could not have negotiated away the arbitration clause. It's an adhesive contract in that regard. You do agree, then, that the arbitration clause is in a contract of adhesion? Yes, it is, Your Honor. She could not negotiate that away. And that's oppressive? Well, it is technically oppressive and it gives the- Well, that's what the law says. That's correct. And that is often referred to as a mere nominal level of procedural unconscionability. Would you agree that the manner in which she became bound to it constitutes surprise? No, Your Honor, I would not. Well, she didn't sign the AADS form, did she? No, she did not. She signed the- She signed the SPAA. That's correct. Which incorporated AADS by reference. That's correct. And the AADS was a one-page, double-sided form with very small print? I would not say very small, Your Honor. Okay, but you will argue about whether it's very, shall we say, small? Well, it did manage to fit the work onto two sides of a single page, yes, Your Honor. And the arbitration clause and all the others at issue in the litigation aren't on the front. They're all on the back? That's correct, Your Honor. And you say, therefore, this cannot be surprise? In fact, Your Honor, I do not believe that is the case in this case, because this case is very unusual in all the procedural unconscionability cases you will ever find. Well, she says she was unaware and not made aware of the arbitration agreement. And the district court rejected that, Your Honor. Well, the district court rejected it. I guess my worry about that is this. Everything I thought was this is a surprise. But this is where the highly unusual facts of this case come into play. In this instance, the AADS that included these three clauses that we're talking about today, particularly the arbitration clause, was in Ms. Newton's possession in her home, mailed to her with no one from my client or anyone else for that matter present. This was not presented at some massive document signing session at the end of a car shopping day or something along those lines. She had the materials in her home. She could have examined them at her leisure, taken her whatever time she wanted to take, spoken to any person she wanted to speak to, including a lawyer. She certainly was not surprised at every opportunity to simply flip the page over and continue reading. Now, she said she did not do that. The district court found that that was not the case and that she did, in fact, have those clauses before her and did, in fact, agree to that arbitration clause. Well, how do you distinguish Chaparrita v. Ralph's Grocery where we determined a contract to be unconscionable? Your Honor, in that case, I believe it was a situation where it was truly an oppressive situation. This was not a person who had the opportunity to take the contract home, look at it, have it examined by anyone, ask the advice of anyone that he or she chose to ask about it. This level of or this factual pattern, I think, is unique among all of the procedural unconscionability cases that you'll ever find, certainly that I have found reported coming out of this Court's jurisprudence, where a party had this level of an opportunity to review, go back, discuss, analyze all of the factors in this agreement. But how do you deal with that the arbitration has to take place in Oklahoma and the fact that global client solutions retain full control over the choice of arbitrators? Do you contend that these factors, while true, do not render the clause unconscionable? That's getting on to the issue of substantive unconscionability, which I'll be happy to do now, Your Honor. And, in fact, those two clauses are ones that we suggest to this Court can be and should be. That's correct, Your Honor. They can be stricken out with the stroke of a pen without doing any violence to any of the other parts of the agreement. And under even California arbitration and separability law, that is a preferred practice. Well, but just a minute. Isn't that an abuse of discretion decision? Yes, well, certainly, Your Honor, yes. And we do say that it is an abuse of discretion. And so, therefore, the district court said no. And that's what we said. And, therefore, abuse of discretion. I'm trying to suggest if it's an abuse of discretion, then the factors I consider are, number one, the agreement contains more than one unlawful provision. I think you'd have to agree with that. Number two, the court would have to, in effect, reform the contract, not through severance or restriction, but by augmenting it with additional terms. I'm having a tough time understanding why it was an abuse of discretion on the district judge's part to find that he wasn't going to sever. Let me take those in reverse order first, and that is the blue lining, simply lining out the offending clauses without having to rewrite the case. And that is very simple to do in this case. It is simply a matter of hitting the delete button or blue penciling, whatever technology you choose to use, to take those clauses out. They're no longer there. As far as ---- And how would you select the arbitrator? Where would the arbitration be? So the district court would have to write those in, right? No, Your Honor. Well, the GAR court had no problem here looking to the FAA itself and saying the FAA allows the district court to fill in that gap and, in fact, to actually choose the arbitrator or the arbitration organization. And this district court had the exact same ability to do that without doing any violence to the arbitration clause itself or to the remainder of the contract. It simply was not necessary. Now, as to the number of offending provisions, Your Honor, this is actually dicta from the Armendariz case, because Armendariz did not actually rely upon this second alternative that is provided with a number of offending clauses. In fact, Armendariz relied on the fact that the arbitration clause in that case was unilateral. Well, frankly, when I look at Armendariz, I mean, when I'm giving abuse of discretion to the district court, I can come out where Armendariz is, and I can also come out where this good judge is. This good judge says, without these provisions, all that's left is an agreement to arbitrate, nothing more. I'd have to put a lot of stuff in there to do that. I'm not going to do that. That's what this judge said. Why is that an abuse of discretion? Well, because, again, because the district court … What is left if I scratch out all those clauses? An agreement to arbitrate, that's it. We've got nothing else. If that is all there is, Your Honor, then all that is necessary for the district court to do is say, and you're going to use the AAA consumer arbitration rules. That is it. And the FAA gives them that discretion. The bottom line is, if it's an abuse of discretion, what is implausible, what is unreasonable in saying, I'm not going to do that? It's because of the federal policy in favor of arbitration. It is an abuse of discretion to fail to apply those provisions of the FAA to fill in those gaps. I've never seen a case that suggests that just because the judge feels like, number one, this has got more than one unlawful provision, and number two, if I had to do it, I'd have to reform the contract all the way through, that now I've abused my discretion because I don't do it. I'd like to get back to the number of offending provisions, which Your Honor just mentioned again, and it's my suggestion to you, first of all, that that is dictated from arbitrariness and need not be followed, but more importantly, that particular mode of analysis has been preempted by concepcion because that is the method of analysis, and it's the only method of analysis I've ever seen in any contract situation where the court is to look into the mens rea of the party who drafted the contract, divine some evil intent, and then punish that evil intent. That is not an appropriate method of analysis in any contractual case, and so it suggests it may be substantive law in California for some other type of case. But we're really struggling. I think Alexi and Teep just has it overruled it, even though it didn't mention it. Yes, because it is a line of analysis that applies only to arbitration clauses. And by the way, it is phrased in the Armendariz case itself. It is an intent to relegate the parties to an inferior form of arbitration, and that is a arbitration-specific method of cutting out a clause. It is not a matter of general state law, and therefore, it is preempted by concepcion. It should not be applied. On the question of the, again, getting back to the procedural inconsolability for a moment. So just so that I understand that, essentially, in terms of that you're saying the fact that the trial judge would not reform the contract shows an antagonism towards arbitration that cannot occur after AT&T mobility? I said that's correct, Your Honor. Since all the court had to do was simply say, use the AAA consumer arbitration rules, or say to the plaintiff, which arbitration rules do you think most advantage you, and we'll use them, did not even undertake that inquiry. And that's what the GAR court said. When you need to fill in a gap, because now that you've blue-penciled the arbitration clause, you no longer have a means of selecting an arbitrator, that's what the FAA tells the court to do because of the strong federal policy in favor of arbitration. I have a question following up on Judge Smith's idea that this is a discretionary decision on the judge. Why would the district judge be out of bounds in saying, you know, this arbitration clause is so oppressive, it's so beyond the kind of overreaching we usually see, where you guys agree that you will solely pick the arbitrator, one arbitrator in your hometown of, where was it, Timbuktu? Tulsa. Tulsa. These people are in, what, California. You've gone so over the edge that we're not going to, you know, you don't get the benefit of the doubt. Again, that's, again, if you're going to go by way of approbation, because these two clauses were chosen, which, by the way, were not that unusual at the time. They're very unusual now. But, you know, assume they were something that my client deserved to be punished for. Well, that is barred by concepcion because that's an arbitration-specific analysis. Can the district court consider the facts of the case in where it appeared that your client just didn't do anything and took advantage of this woman and, you know, that just, you know, didn't negotiate any of her debt, put her in a bad situation? Can the district court consider that in the analysis? Well, if the court did, it would be creating an error of fact because, in fact, my client was not the one that was charged under any of these contracts with doing any of this debt settlement discussion. In fact, the contracts specifically provided that Global and Rocky Mountain, which was just a depository institution, had nothing to do with the debt settlement itself. All that my clients did was financial services. They did ACH transfers to take money out of her account and hold it pending the order of either Ms. Newton or the debt settlement companies which she contracted. That was all my clients did. They just took her money and rendered no service to her. I think that's what I hear you say. No, the service was to withdraw the money by ACH transfers from her account or accounts. I think she changed at least once in that instance. But they did that based on what Rocky Mountain told them to do, right? No, no, no, not Rocky Mountain. It was debt settlement services or the other defense. Right. Rocky Mountain was merely the depository institution. Global was the ACH transfer agent, and that was all they did. So is it disputed that she didn't get any services for what she paid for and that everything went to administrative fees? Again, that would be with respect to the co-defendants, Your Honor, who, as I understand it, are not defending, certainly not continuing to pursue the arbitration issue on appeal. And, again, that was their role in this business arrangement. It was Global and Rocky Mountain's role simply to, again, perform those financial services, withdrawing and holding the money and making disbursements in accordance with directions. Given that you want to get back to procedural unconscionability, I'd like to take you with a question to get you back there. When I read Bruni, and I don't know that that's the way you say it in California, but that's the way I'd say it in Idaho. When I read Bruni, it says, The general rule that one who signs an instrument may not avoid the impact of its terms on the ground that he failed to read the instrument before signing does not apply to an adhesion contract. Well, in the Bruni case, Your Honor, Isn't that what Bruni stands for? Well, I I mean, I'm not trying to trick you here. I was trying to get the holding of Bruni. I will take your word for it. It's a direct quote, Your Honor. But the facts in Bruni were that the plaintiff was not even given the opportunity to read the post provisions of the contract prior to signing it. The, I forget, I think it was an arbitration. If I've got the right case here, because there were several that fall into this category. So it was a more adhesive adhesion contract? Well, it was worse than just being adhesive. It was a surprise. Because in that case, they didn't have the opportunity to take the document home, think it over, read it over, sleep on it, ask anybody they wanted to, that Ms. Newton had in this case. It's a surprise. You're down to about 50 seconds. You wanted us for four minutes. Well, I will spend two seconds then just mentioning the other two clauses that the trial court found substantively unconscionable really actually have nothing to do with arbitration procedure at all and under the Rennes Center case should not have entered into the analysis. We'd ask you to reverse. Thank you. You'll have a half minute left when you come back. Thank you. For the police. May it please the court, my name is Amy Radon and I represent Heather Newton, the respondent in this case. First, just quickly on procedural unconscionability, they've admitted that the clause was oppressive and that alone under the Negrampa case is enough to establish procedural unconscionability under the sliding scale that California courts apply. Here we have more we have surprised, but I don't feel like I should take up my time addressing that because all we need is this minimum level of procedural unconscionability. So I'd like to ---- Well, how would you distinguish AT&T Mobility v. Concepcion and American Express v. Italian Colors from this instant case? Sure, Your Honor. So I don't see Concepcion as posing any obstacle to an unconscionability holding here, and here's why. Concepcion held that state law rules that interfere with fundamental attributes of arbitration are preempted by the FAA. So what's fundamental to arbitration? The right to demand one-on-one as opposed to class arbitration is fundamental. The waiver of a right to a jury trial is fundamental. But Concepcion doesn't apply here just like it didn't apply in the Chavarria case because none of our challenges go to anything fundamental about arbitration. There's nothing fundamental about arbitration that requires a California consumer to travel all the way to Oklahoma to have her dispute heard. Well, your case isn't as bad as Ralph's. I would argue that it's actually ---- I was on Ralph's, though, and I'm on this. So I don't think your case is as bad as Ralph's. So tell me why you think it's worse. Sure, definitely. Well, first of all, Ralph speaks directly to the arbitrator selection provision here. I think those two provisions are the same. The clause here gives them the sole say in who the arbitrator would be. And this court in Chavarria, Judge Callahan, you had no problems holding that that provision is substantively unconscionable. I had no problems. I ultimately got there, but maybe I had problems. All right, fair enough. But here we have more. I mean, they also are requiring our consumer to travel to Oklahoma. This court on Bonk in Nagrampa stated there's no justification for a clause there that required a California small business owner to travel across the country to arbitrate her dispute. And there's no justification for it here other than to give them an unfair advantage. Mr. Calder says fine, then take it out. And that leaves us with just simply an agreement to arbitrate that can easily be interpreted to be an AAA arbitration. Right. And I think Judge Smith pointed out all the flaws in that argument. The court can't add terms. California law of unconscionability is very clear. The court can't add terms to an arbitration clause to make it to cure unconscionability. It can only delete them. And also California law of unconscionability struts that when an arbitration clause is permeated with unconscionability, meaning that it's a systematic effort to impose arbitration as an inferior forum and it has multiple unconscionable features, the clause should be stricken. So are you citing Almoderas on that? Yeah, I'm citing Almoderas. Is that even good law now? It is good law. Again, the only thing that Some people think it should have RIP written on it, rest in peace, after AT&T Mobility. So getting back to AT&T Mobility, Your Honor, the only thing that AT&T versus Concepcion changed was that it no longer permits us to go after, to challenge the fundamental attributes of arbitration. But when you have a case like this where the other side has thrown in all these extraneous limitations that serve no purpose other than to give them an unfair advantage, there's nothing about these provisions that's similar to the one-on-one fundamental type of arbitration or the waiver of a right to a jury trial. And so when they've thrown in all these provisions that seek to taint arbitration, to turn it into an inferior forum, to distort arbitration, this is exactly the type of case where unconscionability still plays a role in policing abuses of bargaining power. Can appellate's counsel distance himself from the fact that it looks like they just took her money and they paid their fees and didn't do anything else? Is that something the court could have considered? Or how does it relate to this appellate? So the underlying merits of this dispute don't factor into whether or not this arbitration clause is unconscionable. That's the Buckeye case. Did the district court do that? No. The district court just looked at the language of the arbitration clause and the arbitration scheme that they had created and said that these four provisions are substantively unconscionable. There's not any elephant in the room, though. What they did? Well, that it looks like that they didn't do anything, and so that the whole thing is sort of like, okay, now you're going to have to go to Oklahoma, even though there were no services rendered. Right. But even putting that aside, even putting their underlying conduct aside, the arbitration clause alone and all the provisions they've thrown in to distort the arbitration process here is enough. Enough on its own. Just putting aside the fact that they took our client's money and didn't provide her with these debt reduction services as promised, that doesn't factor into this analysis. But what does factor in are these four unconscionable features. And so, you know, getting back to the substantive unconscionability, they do offer to sever, but the court in Shavaria held the entire arbitration clause unconscionable when there were two unconscionable features there about upfront costs and arbitrator selection. But this court in Shavaria held that those two provisions alone, the plaintiffs there had actually made an additional challenge. But the court in Shavaria said the two alone lie far beyond the line of what's required to render an arbitration agreement invalid. And I'm quoting from page 926. So if the two provisions in Shavaria lie far beyond the lines of what's acceptable. Shavaria was procedurally stronger. Procedural unconscionability? Yes. I'm not. I'm just quoting because, you know, your client said that she did, you know, they had the special purposes account application form, which in turn referenced and incorporated the account agreement and disclosure statement. You know, why shouldn't she be responsible for reading it before signing it, even though it incorporates it? Your Honor, I think that your point goes to formation. And so we're not appealing the part of the district court's ruling that says that an agreement was formed here. So she signed an application. It incorporated the language of the agreement. But as we explain on pages 29 to 30 of our brief, procedural unconscionability looks at more than just whether an agreement was formed, whether there was a burden on our client to actually read the papers. And, sure, that's true when you're talking about formation. But when you're talking about procedural unconscionability and specifically surprise, that looks at a whole host of different factors that we cite in our brief. And the district court, again, did not abuse its discretion in finding that the clause here was imposed under conditions of surprise. The clause was located on the back of a double-sided agreement. It appeared to end on just the one page. There was room to spare at the bottom of it. Our client wasn't required to sign any part of the agreement or the arbitration clause. The clause wasn't highlighted. And there was actual surprise here. Our client didn't even know that there was a backside to this agreement until they had filed our motion to compel arbitration. But I also don't want the court to lose sight of the fact that here we only need a minimal level of procedural unconscionability. And I think the district court did not abuse its discretion in finding that there's substantial procedural unconscionability here. But Nagrampa holds that we only need a minimal level, and they've conceded that we have that here. So, but getting back to severance, they say that the court should just sever all four of these provisions and send us off to arbitration anyway. And, again, I would point the court back to Chhabria. I think I'm saying that right now. If the two provisions in Chhabria lie far beyond the line of what's acceptable, I would submit that this case isn't even close because they didn't have to demand that our client arbitrate her dispute in Oklahoma. They didn't then, on top of that, have to say that they get the sole say in who the arbitrator would be. They didn't then, on top of that, try to limit our remedies in arbitration and subject our client to having to pay for their attorney's fees. You would never, never see these types of provisions in AT&T or Comcast or Citibank's arbitration clauses. And the Third Circuit that we cite in our Alexander brief instructs that when the sickness has infected the trunk, the court must cut down the entire tree. And here I would submit that the sickness has infected the trunk. They've tainted arbitration. They've thrown in all these provisions that have, that serve no purpose other than to give themselves an unfair advantage. And so that's why the district court was correct here in cutting down the entire tree and refusing to enforce the arbitration clause. And I would like to make a quick comment about Mortenson, which is another Ninth Circuit case that was handed down. Mortenson, they say in their letter of supplemental authorities that Mortenson now states that courts are supposed to give preference to arbitration clauses instead of mere equality. And this may be true, again, when it comes to the fundamental attributes of arbitration, but it's not true in this case. Mortenson, unlike this case, did involve a fundamental attribute of arbitration, involved the waiver of a right to a jury trial. And the Montana state rule at issue there held that because the state, because arbitrations waive your right to a jury trial, arbitration clauses must be entered into knowingly, intelligently, and voluntarily. So this placed a higher standard of consent on arbitration clauses than on other types of contract terms. But, again, that's not this case. We're not here to challenge a class action ban or the waiver of a right to a jury trial. And if we were, we would be in trouble, because those types of clauses now get preference under Concepcion and Mortenson. But that's not this case. And there's nothing here, none of the provisions here speak to anything fundamental about arbitration. So we ask that the district court's ruling be affirmed. Roberts. Thank you, Ms. Reading. Thank you. Mr. Pelzer, you had about a half a minute left. Thank you, Your Honor. Three quick points I'd like to make. The fact that procedural unconscionability here is at the very minimum is important because of the balancing factor. This is a sliding scale. If we have almost nominal, virtually nonexistent procedural unconscionability in a case like this, it heightens the bar on substantive unconscionability significantly, and that is the bar that they have to get over here. The FAA clearly does not permit a court to rewrite an arbitration clause or agreement, and we're not asking for that. But the FAA specifically authorizes a court to choose an arbitrator. We are suggesting that. My time is up. Thank you. Thank you, Mr. Pelzer. Mr. Grandin, thank you very much, too. The case just argued is submitted. It will stand at recess for the morning.
judges: Silverman, Callahan, Smith